UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAUL RIVERA-PEREZ,<br>    Petitioner,<br><br>    v.<br><br>RICK STOVER,<br>    Respondent. | No. 3:23-cv-1348 (SRU) |

### MEMORANDUM OF DECISION

Petitioner Raul Rivera-Perez ("Rivera-Perez") filed *pro se* a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* Petition ("Pet."), Doc. No. 1. At the time he filed, Rivera-Perez was incarcerated at Federal Correctional Institution Danbury ("FCI Danbury"). *Id.* at ¶ 2. Rivera-Perez challenges the failure of the Bureau of Prisons ("BOP") to release him due to their miscalculation of his time credits under the First Step Act ("FSA"). *Id.* at ¶ 13. Rivera-Perez asks the Court to "[i]nstruct" the BOP to properly calculate and provide him his earned FSA time credit and "release him from [the] custody [of] the BOP on home confinement." *Id.* at ¶ 15.

On December 15, 2023, Respondent Rick Stover—the Warden of the federal prison where Petitioner was housed—filed a response asserting that the Petition should be denied because Rivera-Perez (1) failed to exhaust his BOP administrative remedies,[1] (2) Rivera-Perez lacks a right under the FSA or the Second Chance Act ("SCA") to request that a court order his

---

[1] Warden Stover later withdrew the argument that Rivera-Perez had failed to exhaust his claim. Resp't Reply, Doc. No. 12.

transfer to home confinement, and (3) the BOP has discretion under 18 U.S.C. § 3621(b) to delay his transfer to prerelease custody.[2] Resp't Response, Doc. No. 9.

On January 19, 2024, Warden Stover filed a motion to dismiss and supplemental response, arguing that the Petition was now moot because (1) the BOP has transferred Rivera-Perez to prerelease custody after proper calculation and application of his FSA time credits, and (2) the Court cannot order Rivera-Perez's home confinement. Mot. to Dismiss, Doc. No. 13-1.

On October 17, 2024, I notified the parties that, liberally construing Rivera-Perez's *pro se* petition, I read it as raising the alternative argument that any remaining credits that were not applied by the BOP to transfer Rivera-Perez to prerelease custody should be applied to reduce

---

[2] Section 3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
> **(1)** the resources of the facility contemplated;
> **(2)** the nature and circumstances of the offense;
> **(3)** the history and characteristics of the prisoner;
> **(4)** any statement by the court that imposed the sentence—
>     **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     **(B)** recommending a type of penal or correctional facility as appropriate; and
> **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

his time on supervised release. *See* Notice, Doc. No. 16. I gave the parties an opportunity to submit briefing in response to the question whether any remaining FSA time credits may be applied to reduce Rivera-Perez's term of supervised release. *Id.* On November 7, 2024, Warden Stover submitted a response, arguing that the FSA does not permit application of FSA credits to shorten a term of supervised release. *See* Response to Order for Suppl. Br., Doc. No. 17.

For the following reasons, I conclude that the Petition should be **granted**, and Warden Stover's motion to dismiss, doc. no. 13, should be **denied.**

I.    **LEGAL STANDARD**

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, section 2241 petitions are appropriately used to challenge conditions of confinement or sentence calculations. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006); *Dailey v. Pullen*, No. 3:22-cv-1121 (SRU), 2023 WL 3456696, at *2 (D. Conn. May 15, 2023) (considering a challenge to FSA time credit calculation on a section 2241 petition).

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction. Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate "when the district court lacks the statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id.* "A plaintiff asserting subject matter jurisdiction

3

has the burden of proving by a preponderance of the evidence that it exists." *Id.* "Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013).

II.     **BACKGROUND**

Rivera-Perez was sentenced in the United States District Court for the District of Puerto Rico to a term of life imprisonment with a five-year term of supervised release for Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1). *See* Smith Decl., Resp't Ex. 1, Doc. No. 9-1, at ¶ 4. His term of imprisonment was later reduced to a 360-month term of imprisonment with a five-year term of supervised release. *Id.*

A. First Step Act ("FSA")

The FSA encourages federal inmates to participate in evidence-based recidivism reduction programs ("EBRRs") and other productive activities ("PAs") by providing time credits to an inmate who successfully participates in such programs. *See* 18 U.S.C. § 3632(d)(4)(A); 28 C.F.R. § 523.40(b); *Dailey*, 2023 WL 3456696, at *2. An inmate's initial risk and needs assessment is ordinarily completed within 28 days of his/her arrival at the designated facility. *See* BOP Program Statement 5410.01, CN-2, § 5.[3] Inmates are reassessed at each regularly scheduled Program Review throughout the remainder of their incarceration. *See id.* Program Reviews occur approximately every 180 days unless an inmate is within one year of release, at which point those reviews occur every 90 days. *See* 28 C.F.R. § 524.11(a)(2). An inmate earns either ten or

---

[3] Available at https://www.bop.gov/policy/progstat/5410.01_cn2.pdf. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record.").

fifteen days of FSA time credits for every thirty days of successful participation in EBRRs or PAs. 18 U.S.C. § 3632(d)(4)(A).[4]

Under FSA regulation Section 523.41, an otherwise eligible inmate will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:

> (i) Placement in a Special Housing Unit;
> (ii) Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);
> (iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);
> (iv) Placement in mental health/psychiatric holds; or
> (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

28 C.F.R. § 523.41(c)(4)(i)-(v).

Prisoners' terms of imprisonment are computed under applicable law. *See* 18 U.S.C. § 3624(g)(1)(C). Inmates can benefit from time credits only if they have shown a demonstrated risk reduction or are maintaining a minimum/low risk of recidivism. *See* 18 U.S.C. § 3624(g)(1)(B).[5] In addition, an inmate may accumulate credits every month, but in order to be "eligible" to have credits *applied*, an inmate must have "earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's

---

[4] Eligible inmates who successfully complete EBRRs and PAs earn ten days of time credits for every thirty days of successful participation pursuant to 18 U.S.C. § 3632(d)(4)(A)(i). An eligible inmate who has been determined by the BOP to be a minimum or low risk for recidivating over two consecutive assessments earns fifteen days of time credits for every thirty days of successful participation pursuant to 18 U.S.C. § 3632(d)(4)(A)(ii).

[5] An inmate's status under immigration laws may also have an impact his or her ability to apply FSA time credits because prisoners "subject to a final order of removal" are statutorily ineligible to apply earned time credits. 18 U.S.C. § 3632(d)(4)(E); *see Flete-Garcia v. Stover*, 2023 WL 8435854, at *2 (D. Conn. Nov. 29, 2023); *Saleen v. Pullen*, 2023 WL 3603423, at *1 (D. Conn. Apr. 12, 2023).

imposed term of imprisonment." *See* 18 U.S.C. § 3624(g)(1)(A). "In other words, the inmate is not 'eligible' for application of his FSA time credits until the number of credits equals the number of days remaining in his sentence." *Pujols v. Stover*, 2023 WL 4551423, at *1 (D. Conn. July 14, 2023).

Application of FSA time credits enables an inmate to be transferred to prerelease custody or supervised release earlier than the completion date of his sentence. *See* 18 U.S.C. §§ 3624(g)(2) and (3); 18 U.S.C. § 3632(d)(4)(C); *see also Saleen v. Pullen*, 2023 WL 3603423, at *1 (D. Conn. Apr. 12, 2023) ("Prerelease custody can be in the form of either home confinement or transfer to a residential reentry center."). If the inmate has a term of supervised release imposed as part of their sentence, "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months." *See* 18 U.S.C. § 3624(g)(3) (emphasis added).

    B.  Second Chance Act

The Second Chance Act provides, in relevant part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.

18 U.S.C. § 3624(c)(1). Thus, the BOP has discretion to determine whether a prisoner receives prerelease custody placement and how much time the prisoner receives within the twelve-month maximum period. *See* 18 U.S.C. § 3621(b).

    C.  Petitioner's Release Date

At the time this Petition was filed, the BOP had determined Rivera-Perez's projected release date, with consideration of Petitioner's good conduct time under 18 U.S.C. § 3624(b), as

December 3, 2025. *See* Smith Decl., Resp't Ex. 1, Doc. No. 9-1, at ¶ 5. Rivera-Perez was eligible to earn FSA credits, and the BOP's FSA Time Credit Assessment showed that he had earned 780 FSA credits as of December 2, 2023. *Id.* at ¶ 6; FSA Time Credit Assessment, Doc. No. 9-3.

Under 18 U.S.C. § 3624(g)(3), the BOP may apply 365 days of FSA credits to shorten Rivera-Perez's term of imprisonment and begin his term of supervised release at an earlier date. Thus, after application of his 365 days of FSA credit, Rivera-Perez's release date was modified to December 3, 2024. Thereafter, Rivera-Perez had 415 FSA earned but unused time credits remaining. Smith Decl., Resp't Ex. 1, Doc. No. 9-1, at ¶¶ 8-9.

In his supplemental brief, Rivera-Perez explains that Danbury FCI staff advised that he would be released to a halfway house on January 17, 2024. Pet'r Suppl. Br., Doc. No. 7, at 2. Publicly available information shows that Petitioner has now been transferred from FCI Danbury to a residential reentry center in the Middle District of North Carolina.[6]

### III.  DISCUSSION

Warden Stover argues that the Petition is moot because the Court cannot afford Rivera-Perez any further relief. *See* Mot. to Dismiss, Doc. No. 13-1, at 2 (citing *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). The record shows that Rivera-Perez's FSA time credits have been credited to afford him an early transfer to prerelease custody and supervised release under 18 U.S.C. § 3624(g)(3). *See* Smith Decl., Resp't Ex. 1, Doc No. 9-1, at ¶¶ 6-9. Petitioner acknowledges that the BOP properly credited 365 days toward his prerelease

---

[6] The publicly available information of the BOP inmate locator shows that Petitioner is now located at RRM Raleigh. *See* https://www.bop.gov/inmateloc//. The Federal Bureau of Prisons website provides that the RRM Raleigh is the field office for management of residential reentry centers in the Mid-Atlantic region, which includes the Middle District of North Carolina. *See* https://www.bop.gov/locations/ccm/crl/.

custody date and an additional amount toward his transfer to prerelease custody, but he asserts that he still had remaining FSA time credit that he was not given the full benefit of. Pet'r Suppl. Br., Doc. No. 7.[7]

A. Jurisdiction

As an initial matter, I note that following his transfer to prerelease custody, Rivera-Perez has been in the custody of the BOP at the RRM Raleigh, in North Carolina. Habeas relief ordinarily can only be granted in a petitioner's "district of confinement." *Carbo v. United States*, 364 U.S. 611, 618 (1961). *See also Rumsfeld v. Padilla,* 542 U.S. 426, 442 (2004) ("District courts are limited to granting habeas relief 'within their respective jurisdictions.' 28 U.S.C. § 2241(a). We have interpreted this language to require 'nothing more than that the court issuing the writ have jurisdiction over the custodian.'") (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973)). The district of confinement rule "serves the important purpose of preventing forum shopping by habeas petitioners." *Id.* at 447.

Accordingly, courts have held that a petitioner's post-petition transfer to an out-of-district facility "moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam). *See also Beagle v. Easter*, 2021 WL 1026885, at *3 (D. Conn. Mar. 17, 2021) (concluding that a petition challenging the petitioner's conditions of confinement was rendered moot in light of the petitioner's transfer to an out-of-district detention facility).

The Supreme Court and Second Circuit have been clear, though, that the district of confinement rule is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction."

---

[7] Petitioner claims that he had 871 days that should be credited toward his residential reentry confinement or home confinement. *Id.* at 2. But neither his nor Respondent's documentation submitted in this matter substantiates that claim.

*Rumsfeld v. Padilla*, 542 U.S. 426, 451 (2004) (Kennedy, J., concurring); *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011). *See also id.* at 434 n.7 ("The word 'jurisdiction,' of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."). Whether a district court has "jurisdiction" over a section 2241 petition comes down to two questions: "who is the proper respondent to that petition? And second, does the [District Court] have jurisdiction over him or her?" *Id.* at 434. Ordinarily, the proper respondent is a petitioner's immediate custodian, and the proper venue is the district in which the petitioner is confined. *Id.* at 435, 443. Here, Warden Stover is no longer Rivera-Perez' immediate custodian, and Rivera-Perez is no longer confined in the District of Connecticut. But because the rules governing respondent and venue are not a limit on subject matter jurisdiction, "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 441 (citing *Ex parte Endo*, 323 U.S. 283 (1944)).

When Rivera-Perez filed his petition, he was confined at FCI Danbury in Danbury, Connecticut. He properly named Warden Stover, the warden of FCI Danbury, as the respondent to his petition, and filed the petition in the judicial district in which FCI Danbury is located, the District of Connecticut. This Court thus initially obtained jurisdiction over the Petition, and it retains jurisdiction over the Petition even though the BOP has since transferred Rivera-Perez out of the district. The remaining question is whether there is any respondent within this Court's jurisdiction to whom the writ may be directed. Here, unlike cases in which a petitioner challenges their conditions of confinement at a specific facility, and thus seeks injunctive relief

9

against their immediate custodian, Rivera-Perez seeks relief in the form of application of FSA time credits that he alleges he earned but were not properly credited against his sentence. That type of relief can be effectuated by the BOP generally, not any one warden specifically. *See* 28 C.F.R. § 0.96 (delegation of authority to the BOP to compute sentences and designate an inmate's place of imprisonment or confinement). As he acknowledges in his briefing, Warden Stover has been sued in his official capacity, and thus the real party in interest is the BOP. The District of Connecticut has the BOP "within reach of its process," *Ex parte Endo*, 323 U.S. at 306-07, and may therefore direct the writ to the BOP generally. *See also Mason v. Alatary,* 2023 WL 2965619, at *3 (N.D.N.Y. Apr. 17, 2023) ("Courts have found that the presence of a BOP facility within the jurisdiction, even after a petitioner was transferred to a different judicial district, was sufficient to keep the respondent 'within reach' and allow the original district court to maintain jurisdiction.").

Having concluded that this Court may properly exercise its jurisdiction over Rivera-Perez's petition despite his transfer from FCI Danbury to RRM Raleigh, I now turn to the merits of Warden Stover's motion to dismiss.

B. <u>Application of Time Credits</u>

Warden Stover argues that I cannot grant any further relief because Rivera-Perez's transfer to supervised release has been accelerated by one year, *see* 18 U.S.C. § 3624(g)(3) ("the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months"), and he has already been transferred to prerelease custody. *See* Mot. to Dismiss, Doc. No. 13-1, at 3. Warden Stover further argues that any remaining FSA time credits cannot be applied to reduce a prisoner's term of supervised release. *See id.*; Response to Order for Suppl. Br., Doc. No. 17. The FSA provides that time

10

credits "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Some district courts have interpreted that provision as plain language that provides for application of FSA time credits to reduce a term of supervised release, *see Dyer v. Fulgam*, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022) ("the unambiguous, mandatory language of the statute provides that earned-time credits may be applied to a term of supervised release"); but others have rejected that construction of section 3632(d)(4)(C), holding that the statute does not permit a prisoner to reduce the imposed length of supervised release. *See, e.g., United States v. Calabrese*, 2023 WL 1969753, at *2 (N.D. Ohio Feb. 13, 2023) ("[T]he statute provides that time credits shall be applied *toward* supervised release. Use of the word 'toward' means that credits can be applied to bring 'time in prerelease custody or supervised release' closer.").

Relying on *Calabrese*, Warden Stover interprets the phrase "toward . . . time in supervised release" in section 3632(d)(4)(C) as only allowing the BOP to "accelerat[e] the beginning of supervised release." Doc. No. 17, at 3. I disagree that the plain meaning of the word "toward," as used in section 3624(d)(4)(C), is synonymous with "accelerate" or "bring closer." Although I cannot disagree that the word "toward," in isolation, means "in the direction of; on a course or line leading to," *see Calabrese*, 2023 WL 1969753, at *2 (citing Black's Law Dictionary (11th ed. 2019)), the word "toward" does not appear in isolation in section 3632(d)(4)(C). Instead, the word "toward" is used in the phrase "time credits . . . shall be applied toward." Applying credits toward something ordinarily means reducing that thing. For example, applying a store credit toward the cost of an item means that the cost of that item is reduced by the amount of the credit. Similarly, applying a credit toward one's account balance means that the balance will be reduced by the amount of the credit. The plain meaning of the

11

phrase "applied toward time in . . . supervised release" thus clearly suggests that FSA credits are to be applied to reduce a term of supervised release. Interpreting the word "toward," in isolation, to mean anything else would go against the fundamental principle that statutory language must be read in its context. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context.").

Warden Stover also argues that the second sentence of section 3632(d)(4)(C) "makes it clear that time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release, not reduce supervised release." Doc. No. 17, at 3. The second sentence reads: "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Other district courts have also looked to that second sentence of section 3632(d)(4)(C) as confirmation that the prior sentence only allows the BOP to bring closer a term of supervised release. *See, e.g., Guerriero v. Miami RRM*, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024) ("[T]he second sentence clearly indicates that Congress meant that the time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release, or, as the second sentence of § 3632(d)(4)(C) says: 'transfer eligible prisoners . . . into prelease custody or supervised release.'"). Reading the second sentence as merely confirming the meaning of the first, however, would render the second sentence entirely superfluous. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.").

Giving meaning to both sentences of section 3632(d)(4)(C), I conclude that the more natural reading is that the first sentence allows credits to be applied to reduce a term of (i.e., "time in") prerelease custody or supervised release, and the second sentence allows the BOP to apply credits to transfer an inmate to prerelease custody or to supervised at an earlier date. The second sentence thus provides the mechanism to carry out the FSA's purpose of reducing an eligible inmate's time in incarceration. *See* 164 Cong. Rec. S7746 (daily ed. Dec. 18, 2018) (statement of Sen. Cornyn) ("[T]he incentive for prisoners is to go through the program, gain the earned credit so that they can be released."). If it were unclear, the second sentence's reference to section 3624(g) provides clarity on that sentence's purpose. Section 3624(g) states that the BOP "may" transfer a prisoner "to begin any such term of supervised release at an earlier date . . . based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3). Supervised release begins after incarceration ends, so an early transfer to supervised release necessarily reduces an inmate's time spent incarcerated. Thus, contrary to the *Calabrese* court's concern that "reading 'toward time in prerelease custody or supervised release' to mean FSA credits shall reduce the overall terms of either prerelease custody or supervise release would write out any mechanism in the statute for FSA credits to reduce an eligible prisoner's time in custody in prison," 2023 WL 1969753, at *3, the second sentence of section 3632(d)(4)(C) not only provides exactly that mechanism for the BOP to reduce a term of imprisonment, but it uses mandatory language *requiring* release from prison. *See* 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons *shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.") (emphasis added).

Of course, as the Eleventh Circuit pointed out in *Guerriero*, "§ 3632(d)(4)(C) does not permit the BOP to apply a prisoner's FSA time credits to his period of supervised release." 2024

13

WL 2017730, at *1. That is only because the BOP has no role whatsoever in determining or crediting time in supervised release. Once a federal inmate is released from BOP custody to begin supervision by Probation, the BOP has no further authority over that inmate. *See* 18 U.S.C. § 3624(e) ("A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer . . . . The term of supervised release commences on the day the person is released from imprisonment."); *see also United States v. Earl*, 729 F.3d 1064, 1068 (9th Cir. 2013) ("We therefore interpret the term 'released' in the context of the statute to require not only release from imprisonment, but also release from the BOP's legal custody at the expiration of the prisoner's prescribed sentence."). Consistent with that reality, the first sentence of section 3632(d)(4)(C), unlike the second, is not directed at the BOP, but rather uses passive voice: "Time credits . . . *shall be applied* toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added).

Finally, Warden Stover argues that the FSA's purpose of encouraging rehabilitation of offenders—both in prison, through the recidivism reduction programs that the FSA created, and after, through supervised release—would be unfulfilled if credits were used to reduce a term of supervised release, rather than a term of incarceration. *See* Doc. No. 17, at 4-5. In support, he relies on *United States v. Johnson*, 529 U.S. 53, 59 (2000), in which the Supreme Court analyzed a separate statute and explained that the "objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." But, as I just explained, the FSA provides a mechanism *both* for using credits to reduce a term of incarceration and *also* for using any remaining credits to reduce a term of supervised release. In addition, the purpose of both FSA programming and supervised release is the same: rehabilitating the offender, easing the transition to the community, and protecting the public against recidivism.

*See id.* It is perfectly logical that, in order to provide an incentive to prisoners to start their efforts at rehabilitation while still in prison and thus to facilitate their transition to the community, Congress would offer the potential to reduce time in prerelease custody or supervised release, programs that both serve the same goals. *See* 18 U.S.C. § 3624(g)(4) ("In determining appropriate conditions for prisoners placed in prerelease custody . . . [the BOP] shall . . . provide that increasingly less restrictive conditions shall be imposed on prisoners who demonstrate continued compliance with the conditions of such prerelease custody, so as to most effectively prepare such prisoners for reentry.").

Notably, prisoners that the BOP determines are at a low risk of recidivism are eligible to earn additional FSA credits. *See* 18 U.S.C. § 3632(d)(4)(A)(ii) ("A prisoner determined by the [BOP] to be at a minimum or low risk for recidivating . . . shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming."). Again, it makes sense that individuals at a lower risk of recidivating—and who thus are less in need of rehabilitation—can potentially have their time in supervised release be reduced to a greater extent. Doing so does not undermine the rehabilitative purpose of the either the FSA or supervised release, nor does it undermine the incentive structure of the FSA. Rather, it acknowledges that prisoners who rehabilitate in prison need less time to rehabilitate on supervised release. Eliminating any ability for individuals like Rivera-Perez to get the benefit of their remaining FSA credits that the BOP did not—and cannot, by virtue of the twelve-month limitation in section 3624(g)(3)—use to transfer them out of custodial imprisonment, by contrast, would certainly eliminate any incentive to participate in FSA programming once they have earned twelve months of credit.

15

I acknowledge that numerous out-of-circuit cases have rejected *Dyer* and held that FSA credits cannot be applied to reduce a term of supervised release. *See, e.g., United States v. Calhoun*, 2023 WL 7930053, at *2 (S.D. Miss. Nov. 16, 2023) ("*Dyer* has gained almost no traction and has been expressly rejected by nearly every court to consider it."). "Just because nearly every court has reached the same conclusion," however, "does not mean the construction is correct." *Id.* at *3. Based on the plain language of the statute, read in context, I conclude that FSA credits *can*—and in fact *must*, according to the mandatory language of section 3632(d)(4)(C)—be applied to reduce a term of supervised release. *See* 18 U.S.C. § 3632(d)(4)(C) ("Time credits . . . *shall* be applied toward time in prerelease custody *or* supervised release.") (emphasis added).

Rivera-Perez has demonstrated that he has not received the benefit of all the FSA credits that he earned. As of December 2, 2023, Rivera-Perez had earned 780 FSA credits. *See* FSA Time Credit Assessment, Doc. No. 9-3. After application of 365 days of FSA credit to accelerate the start of his term of supervised release, moving his release date to December 3, 2024, Rivera-Perez had 415 unused FSA time credits remaining. *See* Smith Decl., Resp't Ex. 1, Doc. No. 9-1, at ¶¶ 8-9. Warden Stover represents that Rivera-Perez was transferred to prerelease custody on or about January 17, 2024. *See* Mot. to Dismiss, Doc. No. 13-1, at 1 ("[O]n or about January 17, 2024, Petitioner's location of confinement transferred from FCI Danbury to a Dismas Charities residential reentry center."). Even if, as it appears, the BOP applied 321 FSA credits to accelerate Rivera-Perez's transfer to prerelease custody, he would still have 94 unused credits remaining.[8]

---

[8] The BOP transferred Rivera-Perez to prerelease custody 321 days prior to his adjusted release date of December 3, 2024. But that fact does not automatically compel the conclusion that the BOP used 321 of Rivera-Perez' FSA credits to do so. The FSA does impose an obligation on the BOP to apply time credits to accelerate an inmate's transfer to prerelease custody. *See* 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall transfer eligible prisoners, as

Rivera-Perez's petition is therefore not moot, and granting it will allow his remaining time credits to be applied to reduce his term of supervised release.

C. Home Confinement

Finally, I consider Rivera-Perez's specific request for an order instructing the BOP to "immediately release him . . . on home confinement." *See* Pet., Doc. No. 1, at ¶ 15. I cannot afford him that relief because the "BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the inmate from one facility to another." *Milchin v. Warden*, 2022 WL 1658836, *2 (D. Conn. May 25, 2022). Rivera-Perez is currently in prerelease custody, in the custody of the BOP at RMM Raleigh. Prerelease custody may include

---

determined under section 3624(g), into prerelease custody or supervised release."). But the BOP is also under an obligation, separate from that imposed by virtue of applying earned FSA time credits, to transfer an inmate to prerelease custody, when practicable, within the last twelve months of their term of imprisonment. *See id.* § 3624(c)(1) ("The [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility."). The BOP therefore could also have transferred Rivera-Perez to prerelease custody on January 17, 2024 pursuant to its authority under section 3624(c), in the process using *none* of Rivera-Perez's FSA credits. If that were the case, Rivera-Perez would still have 415 unused FSA time credits remaining. In either case, Rivera-Perez has demonstrated that he has some amount of unused FSA time credits remaining that should be applied to reduce his term of supervised release.

I also observe that the BOP's preexisting obligation to transfer inmates to prerelease custody reinforces my conclusion that FSA time credits should *also* be used toward reducing a term of prerelease custody or supervised release, where appropriate. The two statutory provisions just described are not entirely duplicative, because the twelve-month limitation in section 3624(c)(1) does not apply to the FSA. An inmate may spend longer than twelve months in prerelease custody via application of his FSA time credits. *See id.* § 3624(g)(10). Nonetheless, the interaction between section 3624(c) and the FSA indicates that the BOP may be in the practice of applying FSA credits to provide inmates a benefit—transfer from prison to prerelease custody in the final months of a term of imprisonment—that in many cases it is already under an obligation to provide. Allowing FSA credits to be applied toward reducing a term of prerelease custody or supervised release, by contrast, allows the BOP to use FSA credits, beyond the first 365 that are applied to accelerate release from BOP custody to supervised release, to provide an additional benefit to inmates beyond what section 3624(c) already requires.

17

either placement at a residential reentry center or in home confinement. *See* 18 U.S.C. § 3624(g)(2).

Any decision of the BOP relating to the place of confinement "is not reviewable by any court." 18 U.S.C. § 3621(b); *see also id.* ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . ." and may "direct the transfer of a prisoner from one penal or correctional facility to another."); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976) (cautioning against "involv[ing] the judiciary in issues and discretionary decisions that are not the business of federal judges."); *United States v. Kanagbou*, 726 Fed. App'x 21, 25 n.1 (2d Cir. 2018) (noting that "the district court does not control how the Executive Branch carries out a defendant's sentence").

## IV.    CONCLUSION

For the foregoing reasons, Warden Stover's motion to dismiss is **denied**.

Rivera-Perez's petition for a writ of habeas corpus is **granted**. The BOP is directed to calculate the number of Rivera-Perez's unused FSA time credits and inform the U.S. Probation Office for the Middle District of North Carolina of that calculation so that it can apply those credits toward Rivera-Perez's term of supervised release.

The Clerk is instructed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 18th day of November 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge